IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


ANDREA L. GARRETT              )
                               )
v.                             )        No. 3:14-2391
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of Social Security  )


To: The Honorable Aleta A. Trauger, District Judge


## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") that denied Plaintiff's claim for

a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income

("SSI"), as provided by the Social Security Act ("the Act"). The case is currently pending on

Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14),[1] to which

Defendant has filed a response (Docket Entry No. 15).

Upon review of the administrative record as a whole and consideration of the parties' filings,

the Court recommends that Plaintiff's motion for judgment on the administrative record (Docket

Entry No. 14) be GRANTED, the decision of the Social Security Administration be reversed, and

this matter be remanded for further administrative proceedings consistent with this Report.

---

[1] Plaintiff labels this document, "brief in support of complaint for review." Docket Entry
No. 14 at 1. This document is effectively a motion for judgment on the administrative record,
however, as was ordered by the Court. Docket Entry No. 13 at 1.

## I. INTRODUCTION

Plaintiff protectively filed for a period of disability, DIB, and SSI on May 28, 2009. *See* Transcript of the Administrative Record (Docket Entry No. 11),[2] at 56-57. She alleged a disability onset date of July 26, 2011. AR 35. Plaintiff asserted that she was unable to work because of anxiety related disorders and gastroesophageal reflux disease ("GERD"). AR 52-55. Plaintiff filed an additional claim for DIB on April 19, 2010, in which she claimed that she was unable to work due to migraines and affective disorders. AR 58. Plaintiff again filed claims for DIB and SSI on August 9, 2011, in which she claimed she was unable to work because of affective disorders and anxiety related disorders. AR 60-61.

Plaintiff's applications were denied initially and upon reconsideration. AR 56-63. After submitting a request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Shannon H. Smith on September May 22, 2013. AR 6. On July 26, 2013, the ALJ issued a decision unfavorable to Plaintiff. AR 32-34. On October 28, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, AR 1-4, thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s). All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s), where appropriate.

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on January 6, 2012. AR 14-24. Based upon the record, the ALJ made the following enumerated findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.    The claimant has not engaged in substantial gainful activity since July 26, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: generalized anxiety disorder, panic disorder, major depressive disorder, and migraines (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple tasks; sustain concentration, persistence, and pace for two hours with normal breaks spread throughout the day; interact with others appropriately, but would do better with things rather than people; and adapt to occasional changes in the workplace and in job duties.

\*\*\*

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\*\*\*

7.    The claimant was born on November 11, 1980 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

                                    ***

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 26, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 37-47.


# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence contained in the administrative record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.


# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A.  Standard of Review

The determination of disability under the Act is an administrative decision.  The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision.  42 U.S.C. § 405(g).  *See Richardson v. Perales*, 402 U.S. 389, 401,

91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" includes not only previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education, or work experience, if the

impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment, or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relation to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).


**C. The ALJ's Five-Step Evaluation of Plaintiff**

The ALJ in this case resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, AR 37, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1.  AR 38-39.  At step four, the ALJ found that Plaintiff's impairments rendered her unable to perform any past relevant work, AR 46, thus triggering the fifth step of the inquiry.  At step five, the ALJ found that Plaintiff's RFC allowed her to perform a full range of work with certain limitations as set out in the ALJ's findings, AR 39-46, and that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR 46-47.

### D.  Plaintiff's Assertions of Error

Plaintiff contends that the ALJ erred by: (1) failing to properly evaluate and assess the credibility of Plaintiff's statements; (2) failing to provide sufficiently specific reasons for rejecting the opinions of Dr. Brandon Robbins and Brandee Madden; (3) failing to discuss the impact of Plaintiff's migraines and headaches on her ability to work; (4) failing to properly address Plaintiff's symptoms during her questioning of the vocational expert; and (5) disregarding relevant evidence regarding Plaintiff's condition.  DE 14 at 14-35.  Plaintiff argues that the Commissioner's decision should therefore be reversed and benefits awarded, or in the alternative, that this case be remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).  "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is

lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's arguments are addressed below:

**1. Whether the ALJ failed to properly evaluate Plaintiff's credibility.**

Plaintiff asserts that the ALJ "cherry-picked select portions of the medical record" in order to discredit her allegations regarding the extent of her symptoms. DE 14 at 22-23. Plaintiff provides four sub-arguments in support of her assertion that the ALJ improperly considered her credibility. First, Plaintiff argues that the ALJ failed to provide any support for her assessment that Plaintiff's allegations regarding the extent of her mental impairment symptoms are "only partially credible." *Id*. at 14; AR 45. Plaintiff points to the ALJ's reliance on medical notes documenting her treatment with Mental Health Cooperative, AR 51, and contends that the ALJ improperly concluded that Plaintiff's symptoms were less severe than she alleged based on two notes in the record indicating "some brief moments of minor improvement" in her condition. DE 14 at 16. Second, Plaintiff argues that the ALJ's finding that her statements regarding the frequency of her migraine headaches were unsupported by the record ignores the majority of the medical notes contained in the record. *Id*. at 17. Plaintiff references numerous notes in the record that she contends support her statements concerning the severity of her migraine symptoms. *Id*. Third, Plaintiff argues that the ALJ improperly accused her of medication noncompliance without seeking the reasons for such behavior, in violation of Social Security Ruling ("SSR") 96-7p. *Id*. at 19. Finally, Plaintiff argues that the ALJ

mis-characterized her daily activities and erroneously concluded that such activities demonstrated a greater capacity for social interaction and concentration than was alleged. *Id*. at 20.

The ALJ stated the following with respect to the severity of Plaintiff's mental impairments, which include generalized anxiety disorder, panic disorder, and major depressive disorder:

> While [Plaintiff] has experienced one inpatient psychiatric admission during the period in question, and at times reported fairly frequent panic attacks, review of her medical records, especially her records from the Mental Health Cooperative, fails to support her contention that she has panic attacks at the alleged frequency. Further, her records from the Mental Health Cooperative show that she has reported positive improvement from medication.

AR 45. Plaintiff claims that there is no suggestion in the ALJ's summary of her treatment at Mental Health Cooperative, AR 43-45, that Plaintiff has exaggerated the frequency of her symptoms. DE 14 at 14-15. Plaintiff also disputes the ALJ's finding that Plaintiff reported improvement of her symptoms with medication, arguing that she instead demonstrated minor improvement on only one occasion immediately following her hospitalization for psychiatric evaluation. *Id*. at 16. Defendant concedes that the ALJ's opinion does not reference any specific notes from Mental Health Cooperative in support of her opinion, but argues that the record as a whole indicates that Plaintiff "was able to generally behave appropriately" during her home visits with a case manager, and that the frequency of Plaintiff's alleged panic attacks is not supported. DE 15 at 6.

It is the responsibility of the ALJ, and not the reviewing court, to evaluate the credibility of a claimant. *Rogers*, 486 F.3d at 247 (internal citations omitted). The ALJ's determination of credibility is accorded great weight and deference because the ALJ has the opportunity to observe the claimant's demeanor while testifying. *Jones*, 336 F.3d at 476 (citing *Walters*, 127 F.3d at 528). However, the ALJ is not permitted to base her credibility determination solely on an "intangible or

intuitive notion about an individual's credibility." *Id*. (quoting SSR 96-7p, 1996 WL 374186, at *4).

Instead, the ALJ must explain her credibility determination in a way that is "sufficiently specific to

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

"[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations

as to credibility which are not consistent with the entire record and the weight of the relevant

evidence." *Rogers*, 486 F.3d at 248. The issue is therefore whether the ALJ's explanation for

partially discrediting Plaintiff's testimony is supported by substantial evidence in the record. *Jones*,

336 F.3d at 476.

During her hearing before the ALJ, Plaintiff stated that she experiences panic attacks at least

one or two times per week. AR 19. The ALJ expressed her disbelief of such frequency based on

Plaintiff's medical records, emphasizing that the records from Mental Health Cooperative did not

support Plaintiff's claims regarding the frequency of her panic attacks. AR 45. Although the ALJ

provided a summary of Plaintiff's treatment at Mental Health Cooperative in her opinion, AR 43-45,

the Court sees no evidence in this summary suggesting that Plaintiff's claims regarding the frequency

of her panic attacks are not credible. The Court therefore turns to the actual record of Plaintiff's

treatment with Mental Health Cooperative.

On July 5, 2012, Plaintiff advised Dr. Franklin Drummond with Mental Health Cooperative

that she experienced a panic attack each day. AR 1446. On August 20, 2012, Plaintiff reported that

she was unable to go to a store without having a panic attack. AR 1451. On August 22, 2012,

Plaintiff reported "frequent panic attacks." AR 1453. She reported continued panic attacks on

September 5, 2012. AR 1454. On both September 10 and September 18, 2012, Plaintiff reported

12

that "nothing [had] changed" with respect to her mental health. AR 1455-56. On September 26, 2012, Plaintiff reported that it was difficult to leave her home due to fear of experiencing a panic attack. AR 1458. On October 15, 2012, Plaintiff reported that she had "been getting out of the home more and [had] been driving around more," AR 1460, and on November 7, 2012, she reported having "less panic and anxiety." AR 1462. However, on November 27, 2012, Plaintiff stated that she was "experiencing a lot of depression and anxiety." AR 1463. She also "continue[d] to voice anxiety and panic attacks" on December 5, 2012. AR 1464.

Based on the foregoing, the Court cannot agree with the ALJ that the records from Mental Health Cooperative are inconsistent with the alleged frequency of Plaintiff's panic attacks. Plaintiff testified that she experienced at least one or two panic attacks per week. AR 19. The numerous records from Mental Health Cooperative indicate that Plaintiff consistently complained of frequent panic attacks to her providers. There is only one record, dated November 7, 2012, indicating that Plaintiff may have been experiencing less anxiety. AR 1462. The record does not state, however, that the number of panic attacks she was experiencing each week had decreased. Additionally, the next two records from Mental Health Cooperative, dated November 27 and December 5, 2012, indicate that Plaintiff was experiencing *increased* anxiety. AR 1463-64. As such, the Court finds nothing in the Mental Health Cooperative notes that contradicts Plaintiff's statements regarding the frequency of her panic attacks.

The ALJ also referenced Plaintiff's "reported positive improvement from medication" in the Mental Health Cooperative records as a basis for discounting her credibility. AR 45. The ALJ relies on the aforementioned note from November 7, 2012, in which Plaintiff "reported better mood despite continued anxiety and nightmares." AR 44, 1462. The ALJ also noted that during a December 5,

13

2012 visit at Mental Health Cooperative, Plaintiff reported that she had not been taking her medication, which resulted in "increased irritability, anxiety and insomnia," according to her provider. AR 1464.

Notably, there is some evidence in the record that Plaintiff was noncompliant with her medication prescriptions over the course of her treatment. In addition to the previously discussed note from December 5, 2012, the ALJ referenced Plaintiff's failure to take Prazosin prescribed by her provider, as documented in a note from August 22, 2012. AR 43, 1453. A note from September 5, 2012 indicates that Plaintiff "only started the increase in [medication] a day ago," and that Plaintiff was advised to take the medication as prescribed "for a longer trial." AR 43, 1454. During a subsequent visit with her case manager on September 24, 2012, Plaintiff admitted that she had increased her dosage of Seroquel without being told to do so by her provider. AR 44, 1457-58. The ALJ also referenced records from Plaintiff's inpatient hospitalization in June of 2012, in which it was noted that Plaintiff had not been taking her prescribed medication. AR 43, 1273-75, 1299. Despite these examples, Plaintiff repeatedly reported that she was compliant with her medication regimen. AR 1456-57, 1459-60, 1463, 1465, 1467-69, 1471.

In addition to improvement with medication and noncompliance, the ALJ partially discounted Plaintiff's credibility based on her mental functioning scores and her daily activities:

> [T]reatment records show fairly consistent global assessment of functioning scores in the range suggestive of moderate symptoms, aside from when she was hospitalized when off medication and using marijuana. Additionally, the [Plaintiff's] activities suggest that she is less limited from a mental standpoint then [sic] she alleges. She cares for her young son, including driving him to school and helping him with his homework. She regularly interacts with friends and family. She displays ability to care for her own hygiene and while she denied doing household chores, evidence from the notes of her case manager at Mental Health Cooperative tends to suggest otherwise. She manages her own finances. She plays card games with family on

Sunday's [sic] when they come over to visit per testimony. These activities tend to suggest greater capacity for social interaction and concentration than alleged.

AR 45. Plaintiff argues that her statements of the severity of her symptoms are supported by the overall record. DE 14 at 16. Plaintiff claims that she was only "able to drive herself to one appointment, which was one minor notation of improvement." *Id*. at 15. Plaintiff also argues that any "small improvements" in her condition were temporary in light of her complaint that she "was sleeping a lot because she did not know how else to handle the stress." *Id*. at 15-16, 1465. The Court also notes that Plaintiff's complaint to her case manager that she was sleeping more frequently in order to cope with stress, AR 1465, was reported on the same day that she admitted to her provider that she was not taking her prescribed medication. AR 1464-65. The ALJ discussed this noncompliance in her opinion. AR 44.

Nevertheless, despite the ALJ's discussion of Plaintiff's occasional noncompliance with her medication, the Court does not find that there is substantial evidence in the record to support the ALJ's determination of Plaintiff's credibility. The ALJ lays out several reasons for discounting Plaintiff's credibility, but the majority of those reasons are either exaggerated or contradicted by other evidence in the record. The ALJ states that the Plaintiff showed "fairly consistent" global assessment of functioning ("GAF") scores that suggested she suffered from only moderate symptoms. AR 45. The ALJ discounts Plaintiff's GAF score of 30 during her hospitalization, which the ALJ attributes to Plaintiff's being "off medication and using marijuana." AR 45. However, even discounting this GAF score, which suggests severe symptoms, the ALJ ignored other records indicating that Plaintiff was again assigned a GAF score of 30. AR 332. In fact, Plaintiff was assigned a GAF score of 30 the month prior to her hearing before the ALJ. AR 6, 332. As discussed

in greater detail below, the ALJ appears to have completely disregarded this significant piece of evidence.

The ALJ also based her credibility determination on Plaintiff's daily activities, which were characterized as caring for her young son, driving him to school, interacting with friends and family, and doing household chores. AR 45. However, the ALJ ignored substantial evidence in the record suggesting that Plaintiff struggles significantly with each of these activities. There are numerous examples in the record documenting Plaintiff's difficulty in caring for her son, including frequent reliance on friends and family to help her. AR 20, 21, 213, 219, 304, 1460. Additionally, Plaintiff stated during her hearing that she only drives "sometimes," and that other times her mother has to drive her to appointments. AR 21. She further noted that she avoids attempting to drive when she feels anxiety because she was involved in an accident caused by a panic attack. AR 21. Plaintiff also repeatedly complained of poor interactions with family and friends, AR 1448, 1450-52, 1455, 1460, and was diagnosed with agoraphobia. AR 1452-53, 1456-58. Plaintiff specifically noted that she was increasingly involved in confrontations with other people, AR 1458, and that a family member had even demanded that she move out of the house. AR 1461. This represents significant evidence that contradicts the stated basis for the ALJ's credibility finding.

Moreover, the ALJ stated that "while [Plaintiff] denied doing household chores, evidence from the notes of her case manager at Mental Health Cooperative tends to suggest otherwise." AR 45. However, the Mental Health Cooperative notes on which she relies clearly show that Plaintiff was living in a home with numerous other people, including her mother, grandmother, and uncle. AR 1448, 1456, 1460. The ALJ appears to believe that none of the other family members in the house are capable of doing household chores, instead implying that Plaintiff has lied about not doing

16

such chores and drawing a negative inference therefrom. The Court does not agree with this line of reasoning.

The ALJ's credibility finding is entitled to deference because of her unique opportunity to observe the claimant. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Moreover, if an ALJ's decision is supported by substantial evidence, reversal would not be warranted even if substantial evidence would support the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). However, this standard clearly requires that the ALJ's decision be supported by substantial evidence. In light of the foregoing evidence, the Court finds that the ALJ's decision regarding Plaintiff's credibility is not supported by substantial evidence and should therefore be remanded for additional consideration.

### 2. Whether the ALJ provided sufficient reasons for rejecting the opinions of Dr. Brandon Robbins and Brandee Madden.

Plaintiff next asserts that the ALJ failed to provide sufficient reasons for rejecting the opinions of Dr. Brandon Robbins, a consultative medical examiner, and Brandee Madden, a nurse practitioner and Plaintiff's primary provider. DE 14 at 25. Plaintiff argues that although Dr. Robbins was not a treating source, "the same principles requiring an explanation for rejecting his opinion should stand." *Id*. Plaintiff, quoting 20 C.F.R. § 404.1527(c)(2),[3] also argues that the ALJ must give more weight to opinions from treating sources because such sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." *Id*. at 26.

---

[3] Plaintiff incorrectly cites 20 C.F.R. § 404.1527(d)(2).

17

As an initial matter, the Court notes that nurse practitioners fall into the category of "other sources" which are not considered "acceptable medical sources" as defined by the Act. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Pursuant to 20 C.F.R. § 404.1513(d), a claimant may nevertheless introduce evidence from such other sources in order to "show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." Additionally, SSR 06–03p provides that:

> [s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. *Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision*, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *6 (emphasis added). As such, Plaintiff's reliance on SSR 96-2p, which requires that the ALJ provide "specific reasons for the weight given to the treating source's opinion," SSR 96-2p, 1996 WL 374188, at *5, is misplaced.

Nevertheless, the Court must consider whether the ALJ properly considered the opinions of the nurse practitioner and Dr. Robbins. In giving "little weight" to both sources, the ALJ stated the following:

> Dr. Robbins' suggestion that the [Plaintiff's] anxiety symptoms would likely prevent her from keeping a regular work schedule is inconsistent with his examination of the [Plaintiff], the rest of his opinion, and the [Plaintiff's] activities, which included caring for a young child. The nurse practitioner's opinion claimed repeated decompensations [sic] that are not documented in Mental Health Cooperative treatment records, and suggested that the [Plaintiff] would have rather marked functional limitations in many vocationally relevant areas. These suggestions are

inconsistent with her Mental Health Cooperative records, her documented activities, and her performance on examination.

AR 45-46. The only part of Dr. Robbins' medical source statement rejected by the ALJ appears to be his opinion that Plaintiff's "symptoms of anxiety would likely prevent her from keeping a regular work schedule." AR 1139. The ALJ stated that this opinion is inconsistent with his examination of Plaintiff and the remainder of his opinion, which states the following:

> The [Plaintiff] is experiencing mild to moderate symptoms of depression and anxiety. Specific cognitive deficits include moderate impairments in concentration. Long-term memory appears intact. The [Plaintiff's] intellectual abilities most likely fall in the Low Average Range. Due to her anxiety, she would require longer than normal to learn new tasks due to concentration and attention problems. Practical judgment and reasoning is not significantly impaired and would be adequate to make simple, work-related decisions. The [Plaintiff's] symptoms of anxiety would likely prevent her from keeping a regular work schedule. She displayed adequate social behavior during this examination and would be able to interact appropriately with coworkers and supervisors within a work environment.

AR 1139. Additionally, Dr. Robbins stated that Plaintiff "demonstrates the mental and emotional capabilities to understand and manage her own money." AR 1139. Dr. Robbins also diagnosed Plaintiff with panic disorder without agoraphobia, major depressive order of "mild severity," and GAF score of 55. AR 1139.

The Court agrees with the ALJ's assessment that Dr. Robbins' opinion that Plaintiff's anxiety "would likely prevent her from keeping a regular work schedule" is not necessarily supported by the remainder of his opinion. He noted only mild to moderate symptoms of anxiety, as well as "adequate social behavior" that suggests that Plaintiff would be able to interact appropriately with other employees. AR 1139. His findings that Plaintiff's intellectual abilities are in the average range and that she has only "moderate" deficits in concentration further undermines his opinion that she would be unable to have a normal work schedule. AR 1139.

However, the ALJ also based her decision to discount Dr. Robbins' opinion on Plaintiff's "activities, which included caring for a young child." AR 45-46. Plaintiff argues that this assessment is improper because the ALJ "over exaggerated the independence with which [Plaintiff] cares for her son." DE 14 at 24. Plaintiff references several examples in the record of Plaintiff reporting that she receives assistance from her friends and family caring for her son. *Id*.; AR 21, 213, 219, 304. She estimated that her brother, cousins, and friends come to her residence three to five times each week to help her with her son. AR 220. She stated that her son's behavior makes her "panicky" and "nervous," and that her mother or grandmother are subsequently forced to deal with him. AR 21. In addition to these examples, Plaintiff stated to her case manager on October 15, 2012 that although she had considered moving back to Indianapolis, she was hesitant because she "would not have anyone around to help her with her son . . . ." AR 1460. Despite these numerous examples of difficulty, the ALJ based her rejection of Dr. Robbins' opinion, in part, on Plaintiff's ability to care for her son. AR 45-46. This reasoning, however, is not supported by the overall record, and the ALJ failed to address any of this conflicting evidence.

It is well settled that an ALJ "can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). However, while an ALJ "need not discuss every piece of evidence in the record," she is not permitted to ignore evidence that is contrary to her ruling. *Craig v. Colvin*, No. 3:12-CV-00333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (internal citation omitted). In the instant case, the ALJ ignored significant evidence that Plaintiff was frequently unable to care for her son without assistance from family and friends. Therefore, the

Court finds that the weight given to the opinion of Dr. Robbins is not supported by substantial evidence.

Plaintiff also argues that the ALJ improperly discounted the opinion of Brandee Madden, a nurse practitioner who served as Plaintiff's treating provider. Plaintiff claims that the ALJ failed to provide good reasons for effectively rejecting the opinion of Ms. Madden. DE 14 at 26. Defendant correctly notes, however, that the opinion of a nurse practitioner is not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(d). Information from such sources "cannot establish the existence of a medically determinable impairment." SSR 06-03p, 2006 WL 23299939, at *2. Nevertheless, the ALJ "generally should explain the weight given to opinions" from other sources such as nurse practitioners, *Id*., at *6, especially when the nurse practitioner has served as the claimant's treating provider, as is the case with Ms. Madden.

The ALJ explained that she discounted Ms. Madden's opinion because she relied on multiple acts of decompensation by Plaintiff that were not documented in the record. AR 46. She further stated that Ms. Madden's suggestion that Plaintiff would have "rather marked functional limitations in many vocationally relevant areas" was inconsistent with the Mental Health Cooperative records, Plaintiff's documented activities, and her "performance on examination." AR 46.

The ALJ's comment regarding decompensation ostensibly refers to a mental impairment questionnaire completed by Ms. Madden on May 22, 2013, in which she indicated that Plaintiff had experienced four or more episodes of decompensation within a twelve month period, with each episode lasting at least two weeks. AR 1511. The Court notes with interest that the questionnaire also prompted Ms. Madden to provide the following information:

If within one year your patient had more than three episodes of decompensation of shorter duration than two weeks or less frequent episodes of decompensation of longer duration than two weeks, please give the approximate dates of each episode of decompensation.

AR 1511. Ms. Madden did not provide a response to this prompt, which suggests that Plaintiff has experienced at least four episodes of decompensation within a one-year period, all of which lasted more than two weeks in duration. Such episodes are described as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning," and can be demonstrated by "an exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation." AR 1511.

The Court shares the ALJ's skepticism of the severity of the episodes of decompensation implicitly suggested by Ms. Madden, as this appears to contradict Plaintiff's own testimony, in which she stated that she experiences panic attacks once or twice per week, with each one lasting between thirty to forty-five minutes "on a good day," and up to ninety minutes. AR 19. Plaintiff also testified that as a result of depression, she experiences "crying spells" approximately twice a week, with each one lasting between thirty minutes and one hour. AR 25. Plaintiff has not suggested that any of these episodes has lasted more than two weeks. Plaintiff also fails to point to any evidence suggesting such severity in any of the Mental Health Cooperative records.

However, the Court is unable to discern the ALJ's reasoning in her statement that Ms. Madden's opinion is inconsistent with Plaintiff's "documented activities" and her "performance on examination." AR 46. As discussed *supra*, the ALJ mis-characterized the extent to which Plaintiff can independently care for her son, and the ALJ provides no other examples of "documented activities" that contradict Ms. Madden's opinion. With respect to Plaintiff's

22

"performance on examination," the Court is again unable to understand the ALJ's meaning, as she does not specify which examination demonstrates such inconsistencies. Under the section of the mental impairment questionnaire entitled, "DSM-IV Multiaxial Evaluation," Ms. Madden lists Plaintiff's Axis I diagnosis as "panic disorder." AR 1507. This diagnosis does not contradict Ms. Madden's mental impairment questionnaire findings.

Additionally, the Court fails to see evidence in the Mental Health Cooperative notes that demonstrates inconsistency with Ms. Madden's finding, as the ALJ opined. The "marked functional limitations" cited by the ALJ in her opinion appear to reference three sections in the questionnaire regarding Plaintiff's mental abilities to do unskilled work, semiskilled and skilled work, and "particular types of jobs." AR 1509-10. Ms. Madden indicated that Plaintiff's mental abilities were "unable to meet competitive standards" in numerous areas, including dealing with normal work stress, accepting instructions and responding appropriately to criticism from supervisors, and interacting appropriately with the general public. AR 1509-10. Despite the ALJ's opinion otherwise, this appears to be supported by the Mental Health Cooperative records, which include numerous examples of Plaintiff's struggles with social interaction, anxiety, and anger. In 2012, Plaintiff was discharged from Skyline Madison hospital due to anger issues with the staff. AR 1445-46. Plaintiff also claimed that she gets angry without provocation, AR 1448, has a short temper and does not enjoy going out in public, AR 1449, and reported having "violent feelings" towards people. AR 1446. She has previously "isolated" herself in order to avoid confrontations with other people, AR 1452, admits that she becomes irritable and "cannot control herself," AR 1457, and has expressed problems dealing with loud noises. AR 1455. Plaintiff has reported social anxiety and

difficulty leaving her home. AR 1458. The Court also notes that Plaintiff's case manager recommended anger management on multiple occasions. AR 1465, 1467.

Defendant argues that the ALJ was correct to discount the opinion of Ms. Madden because she misunderstood the definition of a period of decompensation. DE 15 at 13. The Court agrees that Ms. Madden's indication that Plaintiff has experienced four or more episodes of decompensation lasting at least two weeks within a one-year period is not supported by evidence. However, this misstatement was a response to one of the myriad of questions contained in the mental impairment questionnaire. AR 1507-12. Additionally, and more significantly, the ALJ's stated reasons for discounting Ms. Madden's opinion also included the Mental Health Cooperative records, Plaintiff's documented activities, and her "performance on examination." AR 46. As previously discussed, the Mental Health Cooperative notes appear to support, not contradict, Ms. Madden's findings. Moreover, the ALJ mis-characterized both the extent to which Plaintiff is able to drive and her ability to independently care for her son. The ALJ points to no other documented activities that contradict Ms. Madden's findings. Furthermore, the ALJ is unclear in her statement that Plaintiff's "performance on examination" contradicts Ms. Madden's opinion. While opinions from "other sources" are not entitled to any special deference, *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014), an ALJ's failure to adequately address other source opinions or articulate the reasons for rejecting such opinions justifies remand "where the failure prevents the reviewing Court from assessing whether the administrative decision is supported by substantial evidence or otherwise deprives the claimant of a substantial right." *Sears v. Colvin*, No. 1:11-CV-0096, 2015 WL 3606800, at *6 (M.D. Tenn. June 8, 2015). The Court finds that the ALJ in the instant case failed

24

to adequately address and articulate her reasons for discounting Brandee Madden's opinion, thus necessitating a remand of this case.

### 3. Whether the ALJ failed to discuss the impact of Plaintiff's migraines on her ability to perform and maintain employment.

Plaintiff next argues that, despite the ALJ's finding that Plaintiff's migraines represent a severe impairment, the ALJ failed to discuss the impact that such migraines would have on Plaintiff's ability to work. Plaintiff points to numerous records that she claims document the consistency of her migraines and headaches, and asserts that the ALJ failed to provide any discussion as to why this condition would not prevent Plaintiff from maintaining employment. DE 14 at 27-28. Plaintiff claims that although she testified during her hearing that she experienced migraines at least two to three times per month, the record repeatedly demonstrates that she suffered migraines at least two times per week. *Id*. at 28; AR 16. Plaintiff notes the significance of this frequency, as the vocational expert testified that there would not be any full-time competitive employment available to an individual who was forced to miss three days of work per month due to migraines. DE 14 at 28; AR 29. Plaintiff also argues that the ALJ erred in not finding that the frequency and severity of her migraines equals Listing 11.03.

The ALJ stated the following with respect to Plaintiff's migraines:

[W]hile the [Plaintiff's] records confirm that she has migraine headaches, the record fails to support the alleged frequency of migraine headaches. While there were a few periods when she reported several migraines in a short period, she also went lengthy periods of time without complaining of migraines. Further, she testified that they only occur a few times a month and last a few hours, so even the alleged frequency is not particularly limiting. Her treatment records also suggest that sumatriptan is helpful with respect to her migraines.

AR 45. Despite Plaintiff's contention otherwise, the record indicates that Plaintiff's alleged migraines occur less frequently than they have in the past. Plaintiff points to her 2009 statement that she "wakes up daily" with migraines that last at least two hours, and that such episodes occur "several times a day." DE 14 at 27; AR 212. However, as noted by the ALJ, Plaintiff testified in 2013 that she experiences migraines approximately two to three times per month. AR 16. She also testified that the migraines may last for a couple of hours depending on whether another individual is able to bring her the medication prescribed to alleviate her symptoms.[4] AR 18. Moreover, the ALJ references evidence indicating that Plaintiff's migraine symptoms are improved with sumatriptan. AR 1499.

Furthermore, the Court sees no error in the ALJ's finding that Plaintiff's migraines do not equal Listing 11.03 found in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ noted Plaintiff's testimony that she experiences migraines approximately two to three times per month. AR 38. Listing 11.03, which pertains to epilepsy but was found by the ALJ to represent the impairment listing most similar to migraine headaches, AR 38, specifically requires a showing that such symptoms "[occur] more frequently than once weekly in spite of at least 3 months of prescribed treatment." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.03. Plaintiff claims that the ALJ failed to consider the entire record of Plaintiff's documented migraines, DE 14 at 29-30, ostensibly relying on records such as the previously discussed 2009 statement indicating daily migraines. AR 212. However, Plaintiff asks the Court to ignore what appears to be an improvement in Plaintiff's condition, as evidenced by her testimony in May of 2013 indicating a significant decrease in the

---

[4] In light of the alleged severity of these migraines, the Court questions why Plaintiff does not appear to carry her migraine medication on her person. AR 18.

frequency of Plaintiff's migraines. AR 38. Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's migraines do not equal Listing 11.03, and similarly finds no error in the ALJ's discussion of Plaintiff's migraines.

### 4. Whether the ALJ improperly failed to address Plaintiff's panic attacks, crying spells, and migraines in questioning the vocational expert.

Plaintiff contends that the ALJ erred by failing to address her panic attacks, crying spells, and migraines to the vocational expert. DE 14 at 31. Plaintiff also notes that the ALJ failed to present the vocational expert with any questions regarding the need for unscheduled breaks in order to attend to symptoms of anxiety and depression. *Id*. at 31-32. Therefore, Plaintiff argues, her "limitations were not fully conveyed to the vocational expert." DE 14 at 32-33.

Both parties acknowledge that although an ALJ does not need to list a claimant's medical conditions, any hypothetical posed to the vocational expert must reference all of a claimant's limitations. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ provided the following limitations in her first hypothetical question posed to the vocational expert regarding Plaintiff's ability to perform past work:

> In our first hypothetical we would have an individual with no exertional limitations. This individual would be able to understand, remember and carry out simple and detailed, but not complex tasks, could maintain concentration, persistence and pace for two-hour intervals with normal breaks spread throughout the day, would be able to interact with others appropriately but would do better with things rather than people, and could adapt to occasional changes in the work place and job duties.

AR 28. After the vocational expert opined that Plaintiff would not be able to perform any past work, the ALJ presented a second hypothetical that included "the same basic parameters, however this individual would be limited to just simple tasks." AR 28.

The Court notes that there appears to be some confusion in the opinion as to which limitations were deemed credible by the ALJ. The ALJ stated that she "affords greater weight to the State agency psychological consultants' assessments . . . ," AR 46, yet the only State agency psychological assessment discussed in the ALJ's opinion was provided by Dr. Brandon Robbins.[5] AR 1137-40. And as previously discussed, the ALJ "affords little weight to the [opinion] of Dr. Robbins," due to his suggestion that Plaintiff would likely be unable to have a regular work schedule. AR 45-46.

Although not discussed in the opinion, the ALJ instead relied heavily on the "mental residual functional capacity assessment" form completed by psychologist Kari Kennedy. Dr. Kennedy opined that Plaintiff was "not significantly limited" in her ability to carry out detailed instructions and interact appropriately with the general public. AR 1156-57. Dr. Kennedy also found that Plaintiff was "moderately limited" in her ability to maintain attention and concentration for extended periods and respond appropriately to changes in the work setting. AR 1156-57. These opinions appear to have formed the basis of the limitations presented in the ALJ's hypothetical questions.

Defendant is correct that an ALJ is only required to incorporate limitations into a hypothetical question that she finds credible. DE 15 at 16 (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, as discussed *supra*, the ALJ failed to provide adequate reasons for finding that the limitations expressed by both Dr. Robbins and Brandee Madden were not credible. Furthermore, as discussed *infra*, the ALJ ignored significant evidence from a separate governmental agency regarding the extent of Plaintiff's limitations. Because these opinions and

---

[5] The ALJ also discussed the opinion of Dr. Mark Allen, a radiologist who examined Plaintiff at the request of the State agency. AR 41; AR 1132-36. However, Dr. Allen's examination included a physical evaluation and not a psychological inquiry.

additional evidence will be revisited and a new hearing conducted upon remand, the Court need not rule on the validity of the questions presented to the vocational expert. The issue of whether the hypothetical questions posed by the ALJ during the 2013 hearing adequately conveyed Plaintiff's limitations is therefore moot.

### 5. Whether the ALJ violated SSR 06-03p by ignoring evidence supporting disability.

Plaintiff's final assertion of error alleges that the ALJ disregarded relevant evidence supporting a finding of disability. Specifically, Plaintiff argues that the ALJ failed to consider the "finding of incapacitation" by the Tennessee Department of Human Services ("DHS"), which granted her "Families First" benefits. DE 14 at 34-35; AR 330, 332. Plaintiff argues that this failure violated SSR 06-03p, which requires that the ALJ "evaluate all the evidence in the case record that may have a bearing on [the Commissioner's] determination or decision of disability, including decisions by other governmental and nongovernmental agencies." DE 14 at 34.

Defendant argues in response that the ALJ "was well aware that Plaintiff was receiving medical assistance benefits," as evidenced by her discussion of Plaintiff's use of the medication Seroquel. DE 15 at 16. Defendant further argues that the ALJ's citation to Exhibit 27E, which includes documents approving Plaintiff's Families First benefits by DHS, adequately demonstrates that the ALJ considered this disability form. DE 15 at 17.

Neither party appears to have noticed that the ALJ stated in her opinion that Plaintiff's income "was essentially limited to her son's supplemental security income benefits and Families First benefits." AR 44. The ALJ was therefore aware that Plaintiff was receiving Families First

benefits, as noted by Defendant. Nevertheless, the Court agrees with Plaintiff that the ALJ failed to consider the DHS determination in reaching her decision. Although an ALJ is not required to defer to the judgments of a state agency, *Moore v. Colvin*, No. 3:14-cv-1525, 2015 WL 1648985, at *6 (M.D. Tenn. Apr. 13, 2015), SSR 06-03p mandates that "[e]vidence of a disability by another governmental or nongovernmental agency cannot be ignored and must be considered." The Court is unpersuaded by Defendant's argument that the ALJ's single reference to Exhibit 27E proves her consideration of the decision. A simple contextual analysis indicates that the ALJ was not referencing the DHS decision in citing Exhibit 27E. The ALJ states in her opinion that she "affords little weight to the opinions of Dr. Robbins and a treating nurse practitioner from the Mental Health Cooperative (Exs. 27E; 24F; 40F)." AR 45. The ALJ is clearly referencing the first two pages of Exhibit 27E, which represent nurse practitioner Brandee Madden's opinion regarding the extent of Plaintiff's impairments. AR 328-29. This is supported by the fact that the other two exhibits cited in the ALJ's statement, Exhibits 24F and 40F, represent Dr. Robbins' report and Ms. Madden's mental impairment questionnaire, respectively. AR 1137-40; 1507-12. There is no reference to the DHS decision.

Additionally, despite the ALJ's reference to Plaintiff's receipt of Families First benefits, AR 44, the opinion completely ignores relevant evidence found in the form containing the DHS decision. For one, the DHS decision, which was reached in April of 2013, shows a GAF score of 30. AR 332. The ALJ's decision, dated July 26, 2013, states that "treatment records show fairly consistent [GAF] scores in the range suggestive of moderate symptoms, aside from when she was hospitalized when off medication and using marijuana." The ALJ therefore believed that, with the exception of Plaintiff's hospitalization in June of 2012, at which point she was assessed a GAF score

of 30, AR 1273, Plaintiff's GAF scores only demonstrated "moderate symptoms." However, this ignores the GAF score of 30 determined by DHS the month before Plaintiff's hearing. AR 6, 332. Additionally, the DHS decision specifically states that "medical evidence establish[es] an impairment that substantially reduces or eliminates the [Plaintiff's] ability to support and/or care for his/her children[.]" AR 332. Despite this finding, the ALJ based her decision that Plaintiff is not disabled largely on Plaintiff's ability to care for her son. In fact, the ALJ made this reference in support of her decision three times. AR 45-46. The ALJ thus ignored a significant piece of evidence that contradicted the basis for her decision. As previously discussed, the ALJ does not have to discuss each individual piece of evidence in the record, but she cannot ignore evidence that is contrary to her ruling. *Craig*, 2014 WL 1287178, at *12. Accordingly, the Court remands this case for additional consideration of the DHS decision.

Inaccuracies, incomplete analysis, and unresolved conflicts of evidence can serve as a basis for remand. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011). Based on the lack of substantial evidence in support of the ALJ's credibility determination, the ALJ's failure to provide sufficient reasons for rejecting the opinions of Dr. Brandon Robbins and Brandee Madden, and the ALJ's failure to consider relevant evidence from another governmental agency supporting a finding of disability, the Court finds that the record in this case has not been fully and fairly developed. It is therefore recommended that this case be remanded for rehearing to include further consideration of the aforementioned opinions and the DHS decision. On remand, the ALJ should provide additional discussion of Plaintiff's credibility, the supportability of the opinions of Dr. Robbins and Ms. Madden, and the DHS findings regarding Plaintiff's application for Families First benefits.

31

## V.  RECOMMENDATION

For the above stated reasons it is recommended that Plaintiff's motion for judgment on the administrative record (DE 14) be GRANTED and that this case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration of Plaintiff's claims.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

BARBARA D. HOLMES
United States Magistrate Judge